IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JENKENS & GILCHRIST<br>A Profession Corporation,<br><br>Plaintiff,<br><br>VS.<br><br>GROIA & COMPANY<br>A Professional Corporation, JOHN<br>FELDERHOF, and<br>INGRID FELDERHOF,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. H-06-3590 |

**JENKENS & GILCHRIST'S RESPONSE TO DEFENDANT
INGRID FELDERHOF'S MOTION TO VACATE ORDER
ON ENTRY OF DEFAULT AND SET ASIDE FINAL JUDGMENT**

Plaintiff, Jenkens & Gilchrist, a Professional Corporation, hereinafter sometimes referred to as "Jenkens", makes the following Response to the Motion to Vacate Order on Entry of Default and Set Aside Final Judgment filed by Defendant Ingrid Felderhof. Because the case involves two Felderhofs, John and Ingrid, Ingrid is referred to herein as "Movant." Exhibits are identified with the instrument with which they were filed. Reference to an instrument includes all attachments and exhibits thereto.

# I.

## BACKGROUND

Rather than repeating the background facts in detail, Jenkens refers the Court to Plaintiff's Complaint and its various attachments. They show Jenkens represented the Movant and her husband, John Felderhof, in S.E.C. and related federal criminal investigations. Defendant Groia & Company, a Professional Corporation ("Groia"), represented the Felderhofs in parallel proceedings in Canada. As part of the fee arrangements for such representation, the Felderhofs executed a Modified Legal Representation Agreement (Plaintiff's Complaint, paragraph 10) on May 16, 1997, whereby they transferred to Jenkens a <u>non-refundable</u> retainer consisting of a U.S. corporation (Travis Close, Inc.) whose sole asset was a residential property in Williamsburg, Virginia (Plaintiff's Complaint, paragraph 9). Jenkens was specifically authorized to sell the property, and was instructed to pay half of the net proceeds of any sale to Groia and his firm (Plaintiff's Complaint, paragraphs 10 and 11, and Exhibits 1, 2 and 6 thereto). Consistent with its ownership, Jenkens has paid taxes and provided management and upkeep of the property since May 1997, and reported and paid taxes on its half of the appraised value of the property as income (Plaintiff's Complaint, paragraph 12 and Exhibit 1).

The matters Jenkens was handling have been resolved and as of June 3, 2006, Jenkens' representation of John Felderhof ended (Plaintiff's Complaint, paragraph 13). Jenkens' representation of Ingrid Felderhof had ended on October 1, 2003 (Plaintiff's Complaint, paragraph 14). Groia still represents John Felderhof in the Canadian proceedings and is owed in excess of $900,000 in fees and expenses (Plaintiff's Complaint, paragraph 16). That was the state of matters in October 2006 when Movant embarked on a course of evasion and obstruction of any effort to resolve the liquidation and distribution of the Williamsburg property amicably. On November 14, Jenkens filed this interpleader and request for declaratory relief. Groia and John Felderhof answered and subsequently joined Jenkens in seeking a dispositive judgment. After a hearing on default and an interim order on January 5, 2007, the Court on January 9, 2007, entered the final judgment Movant now attacks. Movant's motion is without merit. Indeed, the procedural and substantive equities weigh so strongly against her as to question whether many of her arguments even meet the good faith threshold of Fed R. Civ. P. 11.

## II.

## SUMMARY

A.  **Service of process**: Movant <u>was</u> properly served. The service included both the Complaint <u>and</u> the Summons. See Proof of Service, Affidavit of

Service and Supplemental Affidavit of Francis Brennan (Exhibits 1, 2, and 3 hereto).

B. **Movant's conduct was willful and culpable:** In late October, 2006, Movant embarked on the concerted course of evasion that brings us to this dispute. She refused to accept communications from Jenkens (Exhibit 4, Nunnallee affidavit, Exhibit 5, FedEx envelope). She instructed her lawyers not to accept any such communications, not to forward them, not even to acknowledge them, <u>but to destroy them</u>. See Exhibit 6, letter from Ogier Law Firm. Consistent with those instructions, Jenkens' request for attorney Chapman's Contact Information (Exhibit 4) went unanswered (Exhibit 8, hereto Kontrimas Affidavit). She refused to accept service under the Hague Convention (Exhibit 9 hereto). She and her Cayman attorney were <u>not</u> readily available, and despite knowing the identities and addresses of the parties and the court, neither made any effort to contact them.

C. **Excusable neglect.** There was no excusable neglect. Movant's conduct was not neglect at all but a calculated effort to thwart compromise and the deprive their court of jurisdiction over her person. Even after receiving this court's order of conference, she and her attorney did nothing (Motion, Exhibit B, Movant's Affidavit). Despite admitting he read the Complaint no later than twelve days after service, her attorney neither filed answer nor contacted Jenkens, the other defendants, or the Court.

4

D. **Meritorious defense.** Nor does Movant have "several meritorious defenses" (page 15 of Motion to Vacate). She simply repeats multiple times the same argument: that the property was delivered in trust to be "returned" to her in the event Jenkens' other fees were paid (pages 11, 16, 17 and 19 of Motion). This contention is without support in the record and is in direct contradiction to what the transfer actually was: a non-refundable retainer (Exhibit G to plaintiff's Complaint). Movant attempts to convert Jenkens' willingness to waive payment in excess of its costs and expenses to a promise to "refund" the property to her.

E. **Pleadings and Judgment.** The judgment is amply supported by the pleadings, by the Motion for Summary Judgment, and by the Court's Order of January 5, 2007, all of which were before the Court at the time of entry of the Judgment.

F. **Prejudice.** Jenkens and the other parties would be prejudiced by vacation of the judgment.

### III.

### ARGUMENT AND AUTHORITIES

A. **Service of Process:**

1. **Proof of Service:** Proof of Service is established by the return of service Declaration (Exhibit 1) and the two affidavits of the process server (Exhibits 2 and 3).

HOUSTON 378733v4 32444-00016

2. **Controverting Affidavits:** Movant claims that although she was served with process, the service did not include the Summons but only the Complaint. (Motion, pages 7, 8, and 20-24). But her affidavit doesn't actually say that. It can't. It admits service, says the papers looked like legal papers, and that she delivered them to her lawyer. (Motion, Exhibit B) All this on November 16, 2006. It is attorney Chapman, in his affidavit, who claims the service papers did not include a summons (Motion, Exhibit J paragraph 8). Those allegations are amply refuted by both the form Proof of Service (which recited that both the Complaint and the Summons were served), and the Affidavit of Service by the process server[1], and now by the March 1, 2007 affidavit by the same process server (Exhibit 3 hereto).

Chapman's affidavit on this point is both insufficient and inherently non-credible. Old Republic Ins. Co. v. Pac. Fin. Serv. of America, Inc., 301 F.3d 54, 57-58 (2nd Cir. 2002). First, he does not—as he cannot—say the summons was not included in the papers served on the Movant. He did not examine the papers

---

[1] Movant attempts to make much of the typographical error in Paragraph 2 of this affidavit, but not only is that error clarified in the subsequent affidavit by the same process server, but only the most tortured reading would give it the meaning Movant asks the court to accept. See Page 22 of the Movant's motion. Most significant, however, is process server Brennan's subsequent affidavit dated March 1, 2007. Exhibit 3 hereto. In that, not only does he confirm that the service packet included the summons, but he points out that the copy he retained included a handwritten notation made contemporaneous with service. That same handwritten notation: "FGB-1" is specifically referred to in Paragraph 2 of his original affidavit. It also appears on the Order for Conference, which Movant admits she received, attached as Exhibit K to Movant's motion.

6

until 12 days later (paragraph 8, Chapman, affidavit). If it was not with the papers at that time, it could have been lost or discarded between the place of service and his office, or it could have been lost or misplaced during the twelve-day period between service and his purported first inspection of the instruments on November 28, 2006. Equally unavailing is his far-fetched suggestion that despite the service, despite the trouble and expense Jenkens had obviously gone through to obtain it, despite the fact that the papers did include the Complaint, he did not think his client had been sued. Even after receiving a copy of the Court's November 14 Order setting the matter for conference, which Movant and Chapman admit receiving (Exhibits B, J and K), they did nothing. The Court need not decide whether such a hypertechnical view of notice of suit applies or Chapman's explanation for his and his client's failure to act is credible. Old Republic, supra. It is sufficient here that the affidavits on file clearly confirm that service was proper, that it did include the Summons, and that neither Movant's nor Chapman's affidavit refutes that.

3. **Hague Convention:** Movant also faults Jenkens for not serving her under the Hague Convention (Motion, p. 24). But that is exactly what Jenkens attempted to do. See Exhibit $9^2$ hereto, showing process under the Hague

---

[2] In the interest of saving paper, Jenkens does not include herewith its original complaint and attachments which are part of the Hague Convention certificate. They are already on file and before the Court.

7

Convention was unexpected because Movant "willfully avoided" service. Movant prevented the very process she now urges. Fortunately, Jenkens also obtained service pursuant to local Cayman Rules. See Affidavits of Francis I. Brennan attached as Exhibits 1, 2, and 3, and Affidavits of Collette Wilkins attached as Exhibits 5 and 6.

    B.    **Movant's conduct was willful**: Movant's motion and the affidavits of attorney Chapman and herself represent to this Court that they were readily available at any time for communications in the normal course of business (Motion, Exhibits B and J). Nothing could be farther from the truth. Beginning in late October 2006, Movant undertook a course of conduct calculated to prevent Jenkens from communicating or contacting her, or serving her with process.

    1.    She refused to accept the Federal Express packet containing Jenkens' letter of October 26, 2006, (which she apparently did get by facsimile or regular mail since she refers to it in her affidavit. See Motion, Exhibit B).

    2.    Jenkens next tried to work through her lawyers, the Ogier firm. Attached as Exhibit 4 is the November 3, 2006 email response by Ogier informing Jenkens of two things:

        a.    Attorney Chapman was no longer with that law firm.

b.      The law firm had been instructed by Movant not to accept communications from Mr. Felderhof or anyone on his behalf, nor to forward any such communication, and if any such communication came in the future the firm would not acknowledge it, but destroy it. See Exhibit 4.

3.      Significantly, Ogier did not say where or how Chapman could be contacted. Jenkens' request for that information went unanswered. See Exhibit 4 hereto containing Kontrimas' November 3, 2006 email requesting that information and Exhibit 8 hereto, Kontrimas' affidavit confirming the request was never answered.

4.      She willfully avoided service under the Hague convention. See Exhibit 9 hereto.

Movant's conduct was willful and does not justify setting aside the judgment. *Swaim v. Molton Co.*, 73 F.3d 711, 722 (7th Civ. 1996).

It was exactly because of these tactics that Jenkens filed this suit when it did. Movant faults Jenkens for filing suit on November 14, prior to the December 4 date suggested in its October 26 letter (Motion, pp 23, 24). In the October 26 letter, Jenkens had asked Movant to join efforts to resolve the dispute short of litigation. It was this letter that Movant refused to accept from FedEx and whose electronic version she instructed her lawyers not to accept. See Exhibit 4 hereto.

9

In the first place, such an informal deadline for a reply could not and did not prohibit Jenkens from filing earlier. More important, Movant's rejection of these overtures was so clear, so unequivocal as to leave no doubt of her reply. To suggest she was somehow disadvantaged is disingenuous. Not only was her position clear, but further delay would have prejudiced the other parties and would have exposed them to the real risk of a preemptive suit in an inconvenient forum. Significantly, Movant does not suggest she wanted to accept the proposal and would have done so if only Jenkens had waited until December 4. At heart, her complaint is that Jenkens took her at her word—or her actions that as always, speak louder than words—in rejecting its proposal. Despite these obstacles, Jenkens forwarded every letter, notice and order by both regular and Certified Mail or other extraordinary means. These were apparently successful as Movant and Chapman refer to various of them in their affidavits, but she steadfastly refused to accept anything by which her receipt could be verified. See for example Exhibit 9, Hague attempted service of process. Jenkens retained Cayman counsel to aid it in forwarding communications to Movant. See Exhibit 6, Affidavit of Colette Wilkins.

    C.    **Excusable Neglect**: There was no excusable neglect. The above descriptions of Movant's and her attorney's machinations coupled with their failure to respond in any way even after receiving interim orders of the court removes this

10

case from those involving oversight, inadvertence or ignorance. The cases Movant cites at pages 20 and 21 of her motion actually support Jenkens. They show the distinction between negligence and willful conduct. This is not simply a matter of an untimely response. *One Parcel* (763 F.2d 183). Movant was not merely untimely, she attempted to avoid service and when that was not successful, simply refused to answer. She persisted in that course even after receiving the order of conference from the Court (Movant's Exhibits B and J). Willful default ends the inquiry – "there need be no other finding." *Lacy vs. Sitel Corporation*, 227 F.3d, 290, at 292, 5th Cir. 2000. In short, Movant and her Cayman counsel engaged in the very sort of gamesmanship the courts distinguish from excusable neglect. *One Parcel*, supra.

D. **Meritorious Defense**: To avoid a default judgment, the party seeking relief must show that a fair probability of success on the merits exists if the judgment were to be set aside. *Fed. Savings and Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir. 1988). More than rote listing of standard contract defenses is required. Rather, the alleged defense must be supported by cited authority and substantiated in the record. *See id.* at 1070. Movant has failed to provide the requisite support, and accordingly, this Court lacks a basis for finding a fair probability of success on the merits.

11

While Movant claims "several meritorious defenses" (Motion page 15), she asserts only one--that the property in question belongs to her (*id*). She repeatedly asserts as fact (Motion pages 15, 16, 19) what is not only contested, but refuted by the record—that the non-refundable retainer by which the property was transferred to Jenkens was actually just a "trust" (Motion page 16) which Jenkens promised to return at the conclusion of its involvement (*id*). But the record is clear. The property was not in trust or under any other obligation to return. It was a <u>non-refundable</u> retainer (Exhibit 6 to Jenkens' Complaint). Both the Parole Evidence Rule and general considerations of contract law dictate that it be given effect. *See Haden v. David J. Sacks, P.C.*, ---S.W.3d---, No. 01-01-00200-CV, 2006 WL 2567672, at *7-10 (Tex. App.—Houston [1st Dist.] Sept. 7, 2006, no pet.); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 147-48 (Tex. App.—Houston [1st Dist.] 1986, no writ). The agreement is unambiguous, and therefore no parol evidence may be admitted to contradict it. *Haden*, 2006 WL 2567672, at *8, *Nguyen Ngoc Giao*, 714 S.W.2d at 147-48. And it was not without consideration. Jenkens in the United States and Groia in Canada have secured the very result for which they were retained, avoidance of regulatory and criminal sanctions and successful defense of civil claims.

Movant attempts to convert Jenkens' willingness not to retain the full proceeds from any sale of the property to proof that it did not have a <u>right</u> to them.

12

Jenkens reported the value of the property as income, paid the property taxes as owner, oversaw attempts to sell it, including the execution of a listing agreement as owner, and otherwise exercised the prerogatives of ownership without objection by Movant (Complaint, paragraph 12 and Exhibit 1 thereto). That Jenkens does not insist on retaining any recovery that exceeds its fees and expenses does not mean it did not have the right to do so, much less that it had an obligation to transfer it to Movant.

Movant would have the court believe the proposed sale of the Travis Close property is the first and only sale and division between the two firms (Jenkens and Groia) under the Legal Representation Agreements. That is not correct. In addition to Travis Close, the Felderhofs transferred a Lamborghini automobile to Jenkens under the 1997 Agreements. It was sold and the net proceeds were divided equally between the two firms, just as called for in the Agreements without objection or complaint by Movant. Nor did she complain at that time of any deficiency in the Canadian agreement. She has ratified and benefited from both agreements and is estopped to raise objection now.

E. **Prejudice**: While delay by itself might not constitute prejudice, the results thereof do. In this case:

    1. Since the services for which Jenkens was engaged have been terminated, continuing this litigation serves no purpose except to deplete the

resources further. Whether that is Movant's object in her ongoing dispute with her former husband is unknown, but it cannot trump the interests of Jenkens, Groia and the Court.

2. All of the Jenkens' counsel of record who have worked on this case in the Houston office (Kontrimas, Hawkins, Flatten) are no longer with the Firm, and the Firm will cease to exist for the practice of law after March 31, 2007. Currently, lawyers in four firms – Kontrimas at Fulbright & Jaworski; Hawkins at Baker & McKenzie; Flatten at Porter & Hedges; Gilliam at Jenkens & Gilchrist, are attempting to conclude this matter, either without compensation or in further reduction of the sole resource.

3. A lack of finality prevents disposition of the property and causes additional expenses – utilities, taxes, repair, maintenance, insurance.

4. Groia, too, will be prejudiced by further delay. See Exhibit 12 hereto.

Movant's facile contention that no prejudice will result by vacating the judgment is unfounded. Neither the interests of the other parties nor the public policy favoring the finality of judgments and decrees will be served by vacating the judgment and reopening this matter.

14

F.  **<u>The pleadings support the judgment</u>**: Movant next argues Jenkens' complaint does not support the judgment (Section III, p. 29 of the Motion). The complaint specifically recites that the property was an earned and non refundable fee and that Jenkens had been instructed to deliver half the net proceeds of its sale to Heenan Blaikie (the predecessor in interest to Groia). See Complaint, paragraph 10, quoting from the Modified Legal Representation Agreement of May 16, 1997. The first item prayed for in the complaint is that Jenkens be declared sole and lawful owner. That is exactly what the judgment did. The complaint and prayer next asked authority to pay Groia his half the net proceeds as contemplated from the time of the Modified Legal Representation Agreements in May, 1997. The judgment did so. Finally, the judgment prohibited the Felderhofs from instituting an action on the same subject in any other court, exactly as sought in the complaint. Any suggestion that the judgment does not find support in the pleadings results from artful reading of the two and not from any inconsistency.

But there is more. By the time the court signed the judgment on January 9, it had entered its order of January 5, finding all allegations of the complaint to be admitted by the defaulting Movant. And also by January 9, the non defaulting defendants and Jenkens had filed their joint motion for summary judgment pursuant to the agreement they had reached in settlement of the remaining matters in dispute.

15

So the court had the complaint (and all attachments), the January 5 order and the joint motion for summary judgment before it when it entered the judgment of January 9, 2007. The judgment was amply supported by the record.

G. **Supposed Self-Dealing**: Throughout her motion, Movant implies Jenkens went back on its assurance that despite its sole ownership of the property it sought only its costs in managing and disposing of the property. See pp 5, 6, 17, 18, 30 of the Motion. Movant complains that the judgment gave half the net proceeds to Jenkens. Movant confuses the judgment's adjudication of <u>rights</u> under the parties' legal representation agreements with what Jenkens has agreed to do. Attached as Exhibit 10 is a copy of the settlement agreement between Jenkens and the parties who did appear and answer. Under that agreement, after deducting its costs, Jenkens will distribute half the net proceeds to Groia and half to John Felderhof. Jenkens keeps nothing for itself. The judgment merely adjudicated the rights of the parties before it. It did not purport to affect other transfers. There was no self dealing, no going back on its commitment to do the right thing or any of the other breaches of fiduciary duty Movant so lightly accuses Jenkens of.

H. **Other Unfounded Accusations**: Movant accuses Jenkens of failing to respond to her letters (Motion, page 24). She produces no such letters and in fact does not even cite one for the simple reason that none exists. As noted more fully above, Jenkens made all reasonable efforts to communicate with her. She not

only failed to respond but instructed her lawyers not to do so. The question is not whether Jenkens failed to communicate with Movant but whether this Court and its orders and judgments are hostage to such unfounded claims and contentions.

I.  **Allegations of Professional Misconduct**: Jenkens owes to itself and its members involved in this case to say what must be clear to any objective reviewer of this record: that it is not guilty of the professional misconduct leveled at it by Movant – or by her present counsel. Far from taking advantage of Movant, Jenkens not only served her unstintingly as her counsel, but after that relationship ended, did everything in its power to resolve this dispute fairly and to assure Movant was given every opportunity to be heard. The Court need not reach the question whether Movant's unfounded accusations meet the good faith requirements of Rule 11. The record is sufficiently (overwhelmingly) clear that Movant's accusations are part of an after – the – fact effort to undo what came about as a result of Movant's own intransigence and lack of respect for the orders and power of this Court.

## IV.

## CONCLUSION

Movant was properly served. Her service included both the summons and the complaint. Her failure to answer was not the result of excusable neglect but of willful and culpable conduct. She attempted to evade service—even to the point of

telling her lawyers to destroy any communications from Jenkens—and when served, refused to answer or otherwise appear. She received interim orders from the court and still refused to appear. She has no meritorious defense. Vacating the judgment at this late date would prejudice the other parties impair the finality of this Court's orders and judgments, and would reward the Movant for her duplicity.

## V.

## RELIEF REQUESTED

Jenkens respectfully prays defendant Ingrid Felderhof's motion to vacate be denied.

Respectfully submitted,

JENKENS & GILCHRIST,
*A Professional Corporation*

By: /s/ Daniel V. Flatten

Daniel V. Flatten
Attorney in Charge
State Bar No. 07113000
Fed ID No. 2506
1401 McKinney, Suite 2600
Houston, TX 77010
Telephone: (713) 951-3300
Telecopy: (713) 951-3314
ATTORNEYS FOR PLAINTIFF,
JENKENS & GILCHRIST,
*A PROFESSIONAL CORPORATION*

HOUSTON 378733v4 32444-00016

## CERTIFICATE OF SERVICE

I hereby certify that I have sent a true and correct copy of the foregoing Notice of Hearing to the following listed below on this __9__ day of March, 2007 by the Court's ECF filing system and by U.S. mail.

Joseph Groia
Groia & Company, P.C.
372 Bay Street, Suite 1000
Toronto, Ontario
Canada M5H 2W9

John Felderhof
c/o Hotel Sanur Beach
Garada Bunglaow No. 2
Denpasar 80032, Bali Indonesia

Christopher P. Graham
Chamberlain, Hrdlicka, White, Williams & Martin
1200 Smith Street, 14th Floor
Houston, TX 77002-4310

_____
Daniel V. Flatten

HOUSTON 378733v4 32444-00016